IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SHIRLEY MAE GARRETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:15cv471-SRW |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Shirley Mae Garrett commenced this action on July 6, 2015 pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner denying her application for supplemental security income and disability insurance benefits. (Doc. 1, 12 at 2). Plaintiff alleged a period of disability beginning on December 18, 2010 due to bursitis of the lower back, knees and feet, hypertension, gout, migraine headaches, bilateral foot problems, low back pain, "neck and shoulder problems with right hand tingling," and diminished vision. (Doc. 13-2 at 14-15 (citations to the record omitted)). Administrative Law Judge Paul Whitson Johnson ("ALJ") found, *inter alia*, that the plaintiff has the following medically determinable impairments: musculoskeletal pain of unknown etiology, chronic tobacco use and Chronic Obstructive Pulmonary Disease

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security, as the defendant in this lawsuit. The Clerk of Court is DIRECTED to take the appropriate steps to reflect this change on the docket sheet.

1

(COPD), cervical disc disease, plantar fasciitis, diminished vision, and mild, late onset dysthymic disorder. (Doc. 13-2 at 13).

The ALJ found that the plaintiff "does not have a severe impairment or combination of impairments." (Doc. 13-2 at 19). On February 3, 2014, the ALJ issued an adverse decision.[2] (Doc. 13-2 at 11-20). The Appeals Council denied plaintiff's request for review on June 3, 2015, and the ALJ's decision became the final decision of the Commissioner. (Id. at 2-5). This case is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to entry of final judgment by the Magistrate Judge. See 28 U.S.C. § 636(c). (Doc. 8, 9). For the reasons stated herein, and based upon its review of the record, the court finds that the Commissioner's decision is due to be remanded for additional proceedings.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Richardson v. Perales, 402 U.S. 389, 390 (1971); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. It

---

[2] Plaintiff was represented by counsel at the hearing before the ALJ. (Doc. 13-2 at 11).

is "more than a scintilla, but less than a preponderance." Id.  A reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] decision for that of the [Commissioner]." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  In other words, this court is prohibited from reviewing the Commissioner's findings of fact *de novo*, even where a preponderance of the evidence supports alternative conclusions.

While the court must uphold factual findings that are supported by substantial evidence, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether the claimant has a severe impairment;

(3)   whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)   whether the claimant can perform his or her past work; and

(5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993) (citing to a formerly applicable C.F.R. section), overruled on other grounds by Johnson v. Apfel, 189 F.3d 561, 562-63 (7th Cir. 1999); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

Pope, 998 F.2d at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. Id.

## DISCUSSION

The plaintiff raises a single issue on appeal: "whether the ALJ failed to properly consider Ms. Garrett's diminished vision." (Doc. 11 at 1). An ALJ's written decision must be sufficiently developed to afford a reviewing court an opportunity for meaningful review,

and a failure in this regard mandates reversal. See Cornelius, 936 F.2d at 1145-46. Upon consideration of the record, the court finds that the ALJ's written decision is not developed sufficiently for the court to discharge its role and conduct a meaningful review in order to determine whether proper legal standards were applied and whether substantial evidence supports the ALJ's conclusions as to plaintiff's diminished vision.

The ALJ found that plaintiff's diminished vision is a "medically determinable impairment," but he did not find that the condition rises to the level of a "severe impairment." (Doc. 13-2). Because the ALJ determined that plaintiff has no severe impairments, he did not proceed beyond step two of the Commissioner's five-part disability analysis, and he concluded that the plaintiff is not disabled because she does not have a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(i-v). Regarding the plaintiff's diminished vision, the ALJ's written decision provides, in full:

> In an appeal disability report, the [plaintiff] stated her eyesight was getting worse (Exhibit 7E). Her general physical consultative medical evidence showed her vision was 20/70 in the right eye, but the [plaintiff] was not wearing corrective lenses at the examination (Exhibit 6F).[3] There is no objective medical evidence that the [plaintiff's] condition would not be corrected with corrective lenses.

(Doc. 13-2 at 17).

There is very little evidence of record in this case regarding the plaintiff's diminished vision. In a disability report dated August 19, 2012, plaintiff wrote that she has difficulty seeing, she uses "reading glasses when reading," and that she "need[s] real glasses." (Doc. 13-6 at 26-27). Plaintiff complained that her "eye sight [is] getting worse"

---

[3] The portion of "Exhibit 6F" on which the ALJ relies is found in the court's record at Doc. 13-7 at 40.

in a disability report dated November 2, 2012. (Doc. 13-6 at 43). The ALJ did not make any credibility determinations regarding plaintiff's subjective testimony with respect to diminished vision.

Other than the plaintiff's subjective complaints of worsening vision, the record contains notations of two Snellen Exams given for the purpose of measuring the plaintiff's vision by an examining consultative physician, Dr. Alan Mark Babb, M.D. (Doc. 13-7 at 13, 40). Those two examinations constitute the entire medical evidence of record regarding plaintiff's vision, and the ALJ acknowledges that the plaintiff "has received limited medical treatment."[4] (Doc. 13-2 at 16). On March 25, 2010, Dr. Babb measured plaintiff's vision as "20/20 on the right, 20/25 on the left, uncorrected." (Id. at 13). Over two years later, on September 19, 2012, Dr. Babb again examined the plaintiff, and noted that "[s]he is 20/70 right and non-vis on the left. She does not use any corrective eyewear." (Id. at 40). In other words, according to Dr. Babb's notes from the September 19, 2012 exam, the plaintiff has no vision in her left eye.[5] Dr. Babb did not assess the plaintiff's corrected

---

[4] The Commissioner concedes that the only medical evidence of record regarding the plaintiff's vision is found in Dr. Babb's two consultative reports and that the plaintiff was never otherwise diagnosed or treated for diminished vision. (Doc. 12 at 5). Plaintiff argues that she is unable to afford private medical evaluation or treatment for her impaired vision. (Doc. 11 at 6).

[5] The Commissioner argues that Dr. Babb's finding of "non-vis on the left" is "ambiguous, suggesting either that [plaintiff] was blind in the left eye or that [plaintiff] had *no* visual problems." (Doc. 12 at 5) (emphasis in original). The Commissioner further contends that the "ambiguity" is resolved by other evidence of record that plaintiff occasionally drives a car, reads, writes, does puzzles, and watches television; however, the ALJ did not make any findings with respect to plaintiff's diminished vision based on that evidence. (Doc. 12 at 5-6). The Commissioner's argument that Dr. Babb's finding of "non-vis" in plaintiff's left eye is ambiguous is inconsistent with the medical definition of the term. The word "vis" means "force, energy, or power." STEDMAN'S MEDICAL DICTIONARY 1947 (Williams & Wilkins, 26th ed. 1995). Thus, Dr. Babb's finding appears to represent an unambiguous diagnosis that the plaintiff has no "power" or no vision in her left eye. As to the Commissioner's argument that the plaintiff's daily activities weigh against Dr. Babb's finding that the plaintiff has no vision in her left eye, the ALJ unconditionally gave Dr. Babb's findings "substantial" weight; the court would have to substitute its judgment for that of the ALJ and

vision, and his reports do not contain any information as to whether the plaintiff's vision impairment is correctable.[6]

The ALJ unreservedly gave "significant weight" to Dr. Babb's March 25, 2010 opinion and afforded "greater weight" to the second consultative examination because it reflects a more recent examination of the plaintiff. (Doc. 13-2 at 16). The results of the September 19, 2012 Snelling Exam are consistent with the ALJ's observation that the plaintiff "stated her eyesight was getting worse." (Doc. 13-2 at 17).

The ALJ "must make a disability or blindness determination based on social security law." SSR 06–03p, 2006 SSR LEXIS 5, at *16. An impairment is not "severe" at Step Two if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). A non-severe impairment is "merely a slight abnormality which has a minimal effect on the general ability to work." Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). A court is required to consider "whether a reasonable mind could review the [plaintiff's] evidence … and still conclude that the condition had only a minimal effect on her ability

---

reweigh evidence of record in order to consider whether evidence of plaintiff's daily life activities mitigates against Dr. Babb's findings. Such a course of action is beyond the court's limited scope of review and is properly left to the Commissioner. See Dyer, 395 F.3d at 1210.

[6] A medical source's silence generally does not equate to a finding or opinion. See Lamb v. Bowen, 847 F.2d 698 (11th Cir. 1988). Dr. Babb's notation that the plaintiff "does not use corrective eyewear" cannot reasonably be construed as a finding as to the treatability of plaintiff's diminished vision – i.e., that it can or cannot be treated with corrective eyewear. The court's conclusion that Dr. Babb made no such finding is underscored by his statement that, "I am the first to admit that this examination is at best incomplete." (Doc. 13-7 at 41).

to perform the most general and rudimentary functions of a work activity[.]" Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir. 1985).  That said, an impairment is not severe if it is "mild" and "amenable to medical treatment."  Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987).

It is problematic to the court's review that the ALJ does not mention Dr. Babb's finding that the plaintiff has no vision in her left eye, as the ALJ's silence suggests that the ALJ did not consider this relevant diagnosis from an examining medical source whose examination the ALJ afforded great weight.  While an ALJ need not "specifically refer to every piece of evidence," a written decision is legally insufficient if it does not provide enough information to allow the court to conclude that the ALJ considered the medical evidence as a whole.  Taylor ex rel. McCaster v. Comm'r of Soc. Sec. Admin., 216 F. App'x 778, 781 n.1 (11th Cir. 2006).  See also Dyer, 95 F.3d at 1211.  If the ALJ considered plaintiff's diminished right eye vision and overlooked her left eye blindness, that is plain legal error.  "[I]t is clear that an 'ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.'" Dicks v. Colvin, 2016 WL 4927637, at *4 (M.D. Fla. Sept. 16, 2016) (quoting Goble v. Astrue, 385 F. App'x 588, 593 (7th Cir. 2010) (citing, in turn, Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009)).

Assuming *arguendo* that the ALJ considered the totality of the medical evidence, the ALJ's finding that the plaintiff's diminished vision does not rise to the level of a severe impairment at step two is not supported by substantial evidence.  Under the "reasonable mind" standard, Flynn, 768 F.3d at 1275, it is not obviously reasonable that a complete

lack of vision in one eye and diminished vision in the other eye has only a minimal effect on the plaintiff's ability to work or that it is a mild impairment, and there is not substantial evidence in the record to support such a finding.[7] There is also no evidence in the record that the impairment can be corrected. The ALJ's finding that the plaintiff's diminished vision is not a "severe impairment" requires a more thorough explanation so that the court can review the ALJ's conclusion to ensure that proper legal standards were employed and that the decision is based on substantial evidence.

The ALJ's determination that "[t]here is no objective medical evidence that the [plaintiff's] condition would not be corrected with corrective lenses" is problematic primarily because of its ambiguity. (Doc. 13-2 at 17). As the plaintiff correctly observes, the ALJ's finding on this point "is equally susceptible to two conclusions" – i.e., (1) that the plaintiff does not have a severe impairment because her vision is correctable or (2) that plaintiff failed to show that her diminished vision is disabling because she did not produce evidence that her diminished vision could not be corrected with prescription eyewear or, alternatively, that it could be corrected but she cannot afford the treatment. (Doc. 11 at 5).

The Commissioner does not acknowledge the ambiguity; instead, she attempts to clarify the ALJ's decision herself. In her brief, the Commissioner argues that "the ALJ explained that use of corrective lenses reasonably would correct [plaintiff's] visual acuity problems (Tr. 16), and [plaintiff] produced no evidence to suggest otherwise." (Doc. 12 at

---

[7] The court considered the evidence of plaintiff's daily and general activities, which include reading, writing, driving, watching television, shopping, and attending church services; however, her ability to do those activities with difficulty does not provide substantial evidence that her diminished vision is "mild."

4).[8]  The court cannot agree with the Commissioner's interpretation.  It is not evident from the written decision that the ALJ found that the plaintiff's vision could be corrected with corrective eyewear.  Moreover, the Commissioner cannot alter or supplement the ALJ's written decision; the Commissioner's final decision stands alone, and it cannot be amended through the Commissioner's brief. See 42 U.S.C. § 405(b)(1). If the Commissioner concludes that the ALJ's written decision requires clarification or modification after an appeal is brought in a federal court, then the Commissioner has the option of petitioning the court to remand the matter to the Commissioner for additional proceedings in accordance with 42 U.S.C. § 405(g).  That is not how the Commissioner proceeded in this case, and the court must review the ALJ's written decision on its merits.

The court cannot "conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985) (citations omitted).  Such is the case here.  There are too many unresolved questions of fact and law presented by the ALJ's three-sentence discussion of the plaintiff's claim of diminished vision and the evidence supporting that claim to allow the court to do anything more than "peer into the void" and speculate about the ALJ's findings, analysis, and reasoning.

---

[8] If the Commissioner's reading of the written decision were adopted, then the ALJ's finding that the plaintiff's vision could be corrected would be based on no evidence whatsoever and would constitute an error of law for two reasons. First, there is no medical evidence that the plaintiff's diminished vision, which Dr. Babb found to be a complete loss of vision in her left eye and 20/70 in her right eye, can be corrected with corrective lenses.  An ALJ "may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional." Jiles v. Barnhart, 2006 WL 4402937, *3 (N.D. Ala. Sept. 11, 2006) (quoting Marbury v. Sullivan, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J., concurring)). Also, an "ALJ cannot act as both judge and physician."  Marbury, 957 F.2d at 840-41.  An ALJ's "uninformed medical evaluations are prohibited." Jiles, 2006 WL 4402937 at *3.

Daffin v. Colvin, 2015 WL 9295574, at *5 (M.D. Ala. Dec. 21, 2015). Under these circumstances, remand is the only option.

## CONCLUSION

Accordingly, for the reasons discussed, the decision of the Commissioner will be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) by separate judgment so that the Commissioner can conduct additional proceedings consistent with this opinion. The court does not address the issues raised by plaintiff except as expressed in this opinion. The court expects that the Commissioner will consider plaintiff's arguments as to those issues on remand, and will develop the record as is necessary in areas not expressly considered in this opinion.[9]

---

[9] For example, the plaintiff argues that she cannot afford corrective lenses and has no way of obtaining them, assuming that her vision can be corrected, and she also maintains that the ALJ erred by failing to consider plaintiff's poverty as an excuse for failing to wear corrective lenses. (Doc. 11 at 6). The Commissioner asserts that the ALJ did not commit error and the plaintiff's allegation of poverty is disingenuous because she "was able to fund her heavy smoking habit and reasonably could afford new glasses, if needed." (Doc. 12 at 7).

As a matter of law,

The regulations provide that refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability. See 20 C.F.R. § 416.930(b). "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987) (footnote omitted); see Epps v. Harris, 624 F.2d 1267, 1270 (5th Cir. 1980). In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored. See Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Patterson v. Bowen, 799 F.2d 1455, 1460 (11th Cir. 1986). This finding must be supported by substantial evidence. Patterson, 799 F.2d at 1460; see Jones v. Heckler, 702 F.2d 950, 953 (11th Cir.1983).

Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988). That said, "poverty excuses noncompliance." Id. If an ALJ relies upon a plaintiff's non-compliance with a prescribed course of treatment as a basis for entering an unfavorable decision, but the ALJ "did not consider her poverty as a good excuse," the ALJ would commit legal error and reversal would be necessary. Id. To the extent that the parties' arguments on this issue become relevant on remand, they are better left for the Commissioner to address in the first instance, as the record lacks any medical evidence at present from which the ALJ could conclude that

DONE, on this the 16th day of March, 2017.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge

---

plaintiff's vision can be corrected, and it is unclear from the ALJ's written decision that the issues of poverty and non-compliance with a prescribed course of treatment were considered.